UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JOHN MYERS, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | )   No. 1:16-cv-02023-JRS-DML |
| | ) |
| SUPERINTENDENT, Indiana State Prison, | ) |
| | ) |
| Respondent. | ) |

**ORDER ON MOTION FOR RECONSIDERATION
AND FOR RELEASE ON BOND PENDING APPEAL**

Mr. Myers's conviction has been vacated, and he has now, for the first time, requested release pending appeal. Under such circumstances, the law affords Mr. Myers the presumption that he should be released, and the State has failed to offer anything of substance to overcome that presumption.

After this Court granted Mr. Myers's petition for writ of habeas corpus and ordered the respondent to either release or retry Mr. Myers within 120 days of final judgment, the respondent moved to extend the time to comply with the writ to within 60 days of issuance of the appellate mandate. Dkt. 68. Mr. Myers did not oppose the motion. Dkt. 69. Because granting the motion would have required this Court to reissue final judgment, the Court instead construed the respondent's motion as a motion to stay the Court's decision pending appeal and granted the motion. Dkt. 70. Because the motion was unopposed, and the parties had not briefed the factors governing whether a stay was appropriate, the Court did not analyze them.

On April 7, 2020, Mr. Myers filed a motion to reconsider the Court's Order staying its decision. Dkt. 72. Mr. Myers suffers from psoriasis and is prescribed Methotrexate to treat it. Dkt. 73-1. He argues that the medication suppresses his immune system making him more

vulnerable to complications from Covid-19 and that the current pandemic warrants reconsideration of the Court's prior Order. He requests release pending his appeal.[1]

## I.     Rule 23(d) and This Court's Authority to Decide the Pending Motion

The respondent argues that this Court cannot modify its prior custody order while the case is on appeal. This argument is based on Rule 23(d) of the Federal Rules of Appellate Procedure which states that:

> An initial order governing the prisoner's custody or release, including any recognizance or surety, continues in effect pending review unless for special reasons shown to the court of appeals or the Supreme Court, or to a judge or justice of either court, the order is modified *or an independent order regarding custody, release, or surety is issued.*

(emphasis supplied).

Both parties argue that the plain language of the rule supports their position. The Rule indicates that only the Court of Appeals or Supreme Court can review or modify an initial custody order, but it is unclear whether a district court can issue an independent order altering its initial custody decision.

When ruling on Mr. Myers's petition, this Court granted a conditional writ. That initial ruling—that the government must either release or retry Mr. Myers within 120 days of final judgment—was not an initial determination on the merits of Mr. Meyers's custody on appeal.

The respondent's motion to extend the deadline for releasing or retrying Mr. Myers focused on the retrial aspects of the conditional writ, rather than on the question of whether Mr. Myers should be released pending appeal. The respondent's motion argued that it would waste state resources to initiate new trial proceedings while on appeal before the Seventh Circuit because, if the Seventh Circuit reversed this Court, then no retrial would be needed. The respondent also

---

[1] Oral Argument before the Seventh Circuit occurred on May 26, 2020.

argued that if the state initiated new state proceedings against Mr. Myers, he would need separate defense counsel for the state proceedings and conflicts of interest could develop between his state criminal defense attorneys and his federal appellate attorneys. These concerns were abated by staying implementation of the Court's judgment, but they would still be abated if Mr. Myers were released pending appeal. In other words, the question of when the state must initiate new trial proceedings can be separated from the issue of whether Mr. Myers should be released pending appeal. *See Hampton v. Leibach*, 2001 WL 1618737, *2 (N.D. Ill. Dec. 18, 2001) ("The Court agrees that it is appropriate to permit the state to defer its decision whether to retry Hampton until the conclusion of the appeal—thus resolving respondent's primary claim of irreparable injury—but that does not govern whether Hampton should be released pursuant to Rule 23(c) while respondent's appeal is pending."). Because the parties never briefed the question of release on appeal, the Court explicitly did not analyze the factors to make that determination in its prior Order. Furthermore, this new motion from Mr. Myers is his first request for release pending appeal. Therefore, it is fair to say that the Court has not made an initial determination on the merits regarding Mr. Myers's custody on appeal.

Nevertheless, even if the Court's prior Order staying its judgment is construed as an initial custody order, the Court has authority to issue a new Order.

The Seventh Circuit has not addressed this exact question. But other circuits have concluded that the district court retains the power to "issue orders respecting custody or enlargement of the petitioner at least until a party seeks a modification or change of such an order by motion in the court of appeals." *Jago v. U.S.Dist.Ct., N.Dist. of Ohio,* 570 F.2d 618, 626 (6th Cir. 1978); *accord United States ex rel. Thomas v. New Jersey*, 472 F.2d 735, 742-43 (3d Cir.

1973); *Stein v. Wood*, 127 F.3d 1187, 1190 (9th Cir. 1997).[2]   In *Jago*, the district court first denied the petitioner's motion for bail after granting his habeas petition. It then granted a second motion for bail after the respondent had appealed the district court's grant of the writ.

The Sixth Circuit reiterated its position in 1992:

> In the context of habeas proceedings, specifically, we have recognized that, even after an appeal has been taken from the district court's order granting or denying a habeas petition, the district court retains some jurisdiction to issue orders regarding the custody or enlargement of the defendant pending review. *Jago v. U.S. Dist. Ct., N. Dist. of Ohio,* 570 F.2d 618, 623 (1978). The district court retains such jurisdiction because "the question concerning the physical custody of the defendant pending further review *does not affect the matters involved in the appeal itself.*" *Id.* at 622. (emphasis added).

*Workman v. Tate*, 958 F.2d 164, 167 (6th Cir. 1992).

The Seventh Circuit has cited *Jago* approvingly for the proposition that "federal courts have inherent authority to allow petitioners for federal habeas corpus to be released on bail." *Bolante v. Keisler*, 506 F.3d 618, 619–20 (7th Cir. 2007); see also *Cherek v. United States,* 767 F.2d 335, 337 (7th Cir. 1985). But the Seventh Circuit has not ruled on the question of whether the district court can issue a second order on custody under Rule 23(d).

An Eastern District of Wisconsin case also cited *Jago* approvingly and held that a district court can issue multiple orders regarding custody while the case is on appeal. The court also noted that the district court's first order granting a stay pending appeal was pursuant to Rule 8 rather than Rule 23:

> No such "initial order" has been entered in this matter; the court's stay order of March 26, 1985, was entered pursuant to Rule 8, Federal Rules of Appellate Procedure, concerning stays pending appeal, not Rule 23, concerning the custody of prisoners in habeas corpus proceedings. In any case, during the pendency of the appeal process the district court retains power to issue more than one order respecting the custody or enlargement of the successful habeas petitioner.

---

[2] The respondent argues that *Stein* did not involve a second order from the district court, instead the district court had authority to determine whether the State had complied with the conditional writ, but the *Stein* opinion discusses *Jago* at length and explicitly adopts its holding.

*Woods v. Clusen*, 637 F. Supp. 1195, 1197 (E.D. Wis. 1986) (citing *Jago*).

In *Dassey v. Dittmann*, No. 14-CV-1310, 2016 WL 6684214, at *2 (E.D. Wis. Nov. 14, 2016), the district court considered a request for release pending appeal even though it had previously stayed its judgment pending appeal. The district court explained:

> In *Walberg v. Israel*, 776 F.2d 134 (7th Cir. 1985), the court of appeals granted the petitioner's writ of habeas corpus and ordered the state to release him unless it retried him within 120 days. *Id.* at 135. However, the court stayed its mandate to allow the respondent to petition the Supreme Court for certiorari. *Id.* The state did so. When the petitioner subsequently sought release pursuant to Rule 23, a dispute arose as to whether it was for the court of appeals or for the Supreme Court to decide whether the petitioner should be released in the interim. *Id.* Despite its stay, the court of appeals concluded that the issue was for it to decide. *Id.*
>
> This court likewise concludes that, notwithstanding its stay of its judgment pending the respondent's appeal, it remains this court's obligation to address in the first instance whether Dassey should be released while the court of appeals considers the respondent's appeal.

*Dassey*, 2016 WL 6684214, at *2.

The respondent cites *Woodfox v. Cain*, 789 F.3d 565, 568 & n.5 (5th Cir. 2015), for the proposition that this Court lacks authority to rule on the pending motion. Although the Fifth Circuit stated in *Woodfox* that "Rule 23(d) plainly limits the entities that can modify an initial order or issue an independent order regarding custody to 'the court of appeals or the Supreme Court, or to a judge or justice of either court,'" the court declined to decide the issue because it had not been briefed by the parties. The court then assumed that the district court had a "vehicle" for ordering the petitioner's release. *Id*.

Although it is an open question in our circuit, the weight of authority supports the district court's authority to decide the pending motion. Other district courts in our circuit have agreed with this position. Furthermore, it seems inconsistent for the respondent to argue that this Court had the power to modify its conditional writ when asked by the respondent to extend Mr. Myers's custody,

5

but no longer has that power when asked to modify its order a second time. For these reasons, the Court finds that it has the authority to rule on the pending motion whether it is considered an initial decision on the merits of Mr. Myers's custody or an independent order under Rule 23(d).

## II.     Legal Standard

"When a district court has granted habeas relief, the petitioner is granted a presumption in favor of release pending appeal." *Etherly v. Schwartz*, 590 F.3d 531, 532 (7th Cir. 2009) (citing *O'Brien v. O'Laughlin,* 557 U.S. 1301, 1302 (2009), and *Hilton v. Braunskill,* 481 U.S. 770, 777 (1987)). The state can overcome this presumption "if the traditional factors regulating the issuance of a stay weigh in favor of granting a stay." *O'Brien,* 557 U.S. at 1302. The factors used to make this determination are "(1) whether the state has made a strong showing that it is likely to succeed on the merits of its appeal; (2) whether the state will be irreparably harmed absent a stay; (3) whether the issuance of a stay will substantially injure the other parties to the proceeding; and (4) where the public interest lies." *Etherly*, 590 F.3d at 532. "Since the traditional stay factors contemplate individualized judgments in each case, the formula cannot be reduced to a set of rigid rules."[3] *Hilton,* 481 U.S. at 777.

## III.     Discussion

Before turning to analyze the *Hilton* factors, the Court first addresses the respondent's contention that Mr. Myers has waived any arguments that are not related to COVID-19 because he did not oppose the respondent's motion to extend the time to comply with the writ. In support of his argument, the respondent cites Seventh Circuit cases involving invited errors at trial. *United States v.*

---

[3] Although the respondent argues there has been no change in the analysis of these factors since the Court's previous ruling, the Court did not analyze these factors in its prior Order because the respondent had not styled his motion as a motion for a stay, neither party had briefed the factors, and Mr. Myers did not oppose the motion.

*Addison*, 803 F.3d 916, 919 (7th Cir. 2015) (quoting *United States v. Fulford*, 980 F.2d 1110, 1116 (7th Cir. 1992)) ("'It is well-settled that where error is invited, not even plain error permits reversal.'"). The respondent's argument is not persuasive. The invited error doctrine counsels against remedying invited trial errors because to do so would usually involve a mistrial or retrial after appeal—a very costly remedy for an error created, at least in part, by defense counsel. Here, the only cost is the Court embarking on the *Hilton* analysis which it did not do when addressing the respondent's motion for extension of time. Furthermore, the Court can revisit decided issues in a case when "there is a compelling reason, such as a change in, or clarification of, law that makes clear that the earlier ruling was erroneous." *United States v. Harris*, 531 F.3d 507, 513 (7th Cir. 2008). The Covid-19 pandemic is a compelling reason—one both unforeseen and unforeseeable by Mr. Myers at the time he chose not to oppose the respondent's motion to extend the time to comply with the writ—to reconsider Mr. Myers's custody at this time. More specifically, it is a reason, not for release, but to consider the *Hilton* factors. Finally, Rule 23 contemplates the possibility of multiple or revised orders regarding the custody of a habeas petitioner on appeal. For these reasons, the Court will consider the *Hilton* factors to determine whether Mr. Myers should be released pending appeal.

### A. Likelihood of Success on the Merits

This Court has already addressed the merits of Mr. Myers's claims in a lengthy order issued on September 30, 2019. Dkt. 60. Given the double deference applied when addressing ineffective assistance of counsel claims on federal habeas review, this Court did not grant Mr. Myers's habeas petition lightly and believes its decision to be correct and consistent with the law. Therefore, "any attempt to predict the likelihood of reversal of its own decision places the Court in the awkward position of second guessing its own work." *Newman v. Harrington*, 917 F. Supp. 2d 765, 791 (N.D. Ill. 2013).

The respondent argues that it is likely to succeed on appeal because the state appellate court reasonably applied *Strickland* and "there is no clearly established 'cumulative-error doctrine.'" Dkt. 76 at 11.

To argue for the respondent's likelihood of success on the merits, the respondent reiterates the arguments he previously raised in this Court against Mr. Myers's petition. The Court is not persuaded by these arguments, particularly the argument that there is no clearly established "cumulative-error doctrine." The Seventh Circuit has repeatedly held that the prejudice resulting from multiple instances of deficient performance must be considered together. *Sussman v. Jenkins*, 636 F.3d 329, 360-61 (7th Cir. 2011) (explaining that when faced with multiple errors by counsel, the Court "must consider the[ir] cumulative impact" to determine prejudice); *Martin v. Grosshans*, 424 F.3d 588, 592 (7th Cir. 2005) ("even if [counsel's] errors, in isolation, were not sufficiently prejudicial, their cumulative effect" can amount to prejudice under *Strickland*); *Goodman v. Bertrand*, 467 F.3d 1022, 1030 (7th Cir. 2006) ("the pattern of counsel's deficiencies must be considered in their totality"); *Raether v. Meisner*, 608 F. App'x. 409, 415 (7th Cir. 2015) ("The state court examined the prejudice flowing from each alleged error individually, but the correct question is whether [the defendant] was prejudiced by counsel's errors in the aggregate.").

To the extent this Court should assess the respondent's further assertion that if the respondent loses on appeal before the Seventh Circuit, the State is likely to succeed when retrying Mr. Myers, the Court notes the extensive discussion of the admissible evidence against Mr. Myers in its Order granting Mr. Myers's petition. The Court concluded that the evidence against Mr. Myers was "far from overwhelming." Dkt. 60 at 113. "Other than [a jailhouse informant's] testimony, there was no direct evidence linking Mr. Myers to the crime; there were no witnesses that ever saw Mr. Myers with Ms. Behrman; there was no physical evidence linking Mr. Myers to

the crime; and, had the rape evidence been properly excluded, there was no evidence that Mr. Myers had any motive to kill Ms. Behrman." *Id.*

The respondent's assertion that the State is likely to convict Mr. Myers in a retrial is speculative at best.

The Supreme Court has highlighted the importance of the factor of likelihood of success on the merits: "[t]he balance may depend to a large extent upon determination of the State's prospects of success in its appeal. Where the State establishes that it has a strong likelihood of success on appeal, or where, failing that, it can nonetheless demonstrate a substantial case on the merits, continued custody is permissible if the second and fourth factors in the traditional stay analysis militate against release." *Hilton*, 481 U.S. at 778.

The respondent has failed to make a strong showing that he is likely to succeed on the merits. He has reiterated the arguments previously raised before this Court and questioned the viability of the Court's cumulative error analysis. Because the Court finds that the cumulative error argument lacks merit, the respondent is left with simply arguing that the Seventh Circuit will review the case *de novo* and apply AEDPA deference to the state court's ruling. This alone is not enough to show that the respondent has even a substantial case on the merits.

All successful petitioners face *de novo* review on appeal, and with the "double deference" of AEPDA and *Strickland* review. But these legal standards alone do not rebut the Rule 23(c) presumption of release. Otherwise, nearly every respondent appealing a grant of habeas relief would have a substantial case on the merits and the presumption would be all but eliminated.

### B. Irreparable Harm to the State

In *Hilton*, the Supreme Court noted three factors to consider when assessing whether the State will suffer irreparable harm without a stay: the possibility of the petitioner fleeing, the risk

that he will pose a danger to the public, and the State's interest in continuing custody pending appeal. 481 U.S. at 777. As for the last factor, the *Hilton* court noted that the State's interest in continuing custody "will be strongest where the remaining portion of the sentence to be served is long, and weakest where there is little of the sentence remaining to be served." *Id.*

The respondent only briefed the third of these factors. He argues that because Mr. Myers has served less than half of his lengthy sentence, the State has an "interest in continuing custody and rehabilitation pending a final determination of the case on appeal." Dkt. 76 at 12 (quoting *Braunskill*, 481 U.S. at 777). Assuming the State has a strong interest in this factor, the respondent has failed to address the other two factors or to raise any other argument that the State will suffer irreparable harm if Mr. Myers is released.

The respondent provided no evidence that Mr. Myers has a criminal record apart from the vacated conviction or that he has been violent in prison. Mr. Myers asserts that he has no record of violence in prison. Dkt. 73 at 25. Other than a mention on direct appeal that at some point Mr. Myers was held in the Monroe County Jail on an unrelated charge, there is no evidence in the record of Mr. Myers's criminal history or conduct record in prison. Therefore, the Court cannot conclude that he would be a danger to the public.

Mr. Myers states that upon release he will live with his mother who resides in Ellettsville, Indiana. Other members of Mr. Myers's family also live in Ellettsville. The respondent has provided no evidence that Mr. Myers is a flight risk. Furthermore, "if he were to flee and become a fugitive while an appeal is pending, controlling law would result in this [C]ourt's judgment being vacated, and his ... conviction[s] and sentence being reinstated despite his claims of innocence." *Watkins v. Miller*, 2000 WL 680418 (S.D. Ind. May 16, 2000) (citing *Dently v. Lane*, 720 F.2d 472 (7th Cir. 1983)). "To the extent that a risk of non-appearance is inherent whenever a person faces

10

a lengthy period of incarceration, these risks can be appropriately mitigated through routine conditions of release." *Dassey*, 2016 WL 6684214, at *5 (citing *Newman*, 917 F. Supp. 2d at 790).

Overall, the respondent has not made a strong showing that the State will suffer irreparable harm if Mr. Myers is released pending appeal.

### C. Substantial Harm to the Petitioner

"The interest of the habeas petitioner in release pending appeal, always substantial, will be strongest where the factors mentioned in the preceding [section] are weakest." *Hilton*, 481 U.S. at 777. Here, Mr. Myers enjoys the usual substantial interest a petitioner in Mr. Myers's shoes has in release pending appeal. Given the respondent's weak showing of likelihood of success on the merits or of irreparable harm, this is enough. The worldwide Covid-19 pandemic and the documented presence of Covid-19 in the prison population of Indiana State Prison where Mr. Myers is incarcerated pose additional risk of potential though not dispositive harm. Although this is a factor that merely bolsters the conclusion that Mr. Myers has a substantial interest in release pending appeal, it is an unusual and unforeseen factor worthy of some discussion.

The respondent argues both that Mr. Myers is safer in prison than in the community and that he could potentially get Covid-19 in prison before his release and then spread it to the community of Ellettsville. Dkt. 76 at 7-9. If these contradictory arguments do not completely cancel each other out, then the latter at least substantially undercuts the former.

Data from the Indiana Department of Correction website shows that three inmates have tested positive for Covid-19 and are in isolation. IDOC Facility Covid-19 Statistics, available at https://www.in.gov/idoc/3780.htm (last visited May 20, 2020). Ellettsville, Indiana, is located in Monroe County which has reported 152 cases of the disease. Indiana Covid-19 Data Report, available at www.coronavirus.in.gov (last visited May 20, 2020). These data points do not clearly

indicate whether Mr. Myers would be safer from Covid-19 in prison or in the wider community, however it is generally understood that prisons are less equipped to meet Centers for Disease Control & Prevention guidelines to prevent the spread of infection than individuals living in a home environment. *See Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities*, Ctrs. for Disease Control & Prevention (Mar. 23, 2020), https://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/guidance-correctional-detention.html (last visited May 20, 2020) ("Incarcerated/detained persons live, work, eat, study, and recreate within congregate environments, heightening the potential for COVID-19 to spread once introduced.").

The respondent argues that Methotrexate may reduce the activity of one's immune system without lowering it below a normal level, but the website cited by both Mr. Myers and the respondent states that "Methotrexate can reduce your body's ability to fight infections." *Psoriasis Treatment: Methotrexate*, Am. Academy of Dermatology, https://www.aad.org/public/diseases/psoriasis/treatment/medications/methotrexate (last visited Apr. 26, 2020). The parties have provided limited evidence in support of their opposing views on this issue, perhaps because much remains unknown about Covid-19 and how immunosuppressant drugs, like Methotrexate, impact a person's ability to respond to the disease. Nonetheless, the Court concludes that Mr. Myers has a substantial interest in release pending appeal of the grant of his habeas petition. Although the Court lacks sufficient information to quantify with much specificity the impact of Covid-19 on Mr. Myers's interest in release, it is sufficient to say that the existence of the disease in his prison facility and his use of Methotrexate heighten his already substantial interest in release.

### D. Public Interest

The respondent devotes one sentence in his brief to the question of public interest: "The public interest is better served by keeping a convicted murderer in prison to shelter in place than releasing him into the community." Dkt. 76 at 12. While the State and public have an obvious interest in incarcerating persons convicted of violent crimes, if the fact of Mr. Myers's vacated conviction was all that was necessary to overcome Rule 23(c)'s presumption in favor of release, the presumption would be meaningless. *Dassey*, 2016 WL 6684214, at *4; *Hampton v. Leibach*, 2001 WL 1618737 (N.D. Ill. Dec. 18, 2001). Moreover, as much as public interest favors incarcerating the convicted, it also favors ensuring that persons are not detained in violation of the Constitution.

The court is also mindful that because a jury rendered a judgment of conviction against Mr. Myers, his release pending appeal warrants special consideration. Indeed, the Supreme Court in *Hilton* went on to note "a successful habeas petitioner is in a considerably less favorable position than a pretrial arrestee . . . to challenge his continued detention pending appeal. Unlike a pretrial arrestee, a state habeas petitioner has been adjudged guilty beyond a reasonable doubt by a judge or jury, and this adjudication of guilt has been upheld by the appellate courts of the State." *Hilton*, 481 U.S. at 779. While this court has determined habeas relief is appropriate here, "that determination itself may be overturned on appeal before the State must retry the petitioner." *Id.* Thus, the Due Process Clause does not "prohibit a court from considering, along with the other factors that we previously described, the dangerousness of a habeas petitioner as part of its decision whether to release the petitioner pending appeal." *Id.* Yet, as noted above, the State has offered no independent evidence that Mr. Myers poses any particular danger to the community beyond the conviction itself.

13

### IV. Conclusion

"Where the State establishes that it has a strong likelihood of success on appeal, or where, failing that, it can nonetheless demonstrate a substantial case on the merits, continued custody is permissible if the second and fourth factors in the traditional stay analysis militate against release. Where the State's showing on the merits falls below this level, the preference for release should control." *Hilton*, 481 U.S. at 778 (citations omitted). That is the case here.

The court granted Mr. Myers's petition and ordered that he be released or retried. There is a presumption that successful habeas petitioners should be released while the respondent appeals that decision. The respondent has failed to rebut that presumption. The respondent has not demonstrated that he has a strong likelihood of success on appeal, nor that he has a substantial case on the merits. The respondent does not argue that Mr. Myers poses a risk of flight or a danger to the community. The respondent has not shown that the State will be irreparably harmed by Mr. Myers's release or that the public interest lies in favor of his continued incarceration pending appeal. Therefore, Mr. Myers's motion, dkt. [72], is **granted to the extent** the Court orders his conditional release from the custody of the respondent.

Because an appeal is pending and Mr. Myers may be required to serve the remainder of his sentence or otherwise appear for legal proceedings, the Court will impose conditions upon his release consistent with those routinely imposed in analogous circumstances. Although the respondent does not request that the court order that Mr. Myers be subject to any formal supervision, the Court orders that Mr. Myers be supervised by the United States Probation Office for the Southern District of Indiana. Courts routinely order such supervision when persons are released under Fed. R. App. P. 23. *See, e.g.*, *Dassey*, 2016 WL 6684214; *Harris v. Thompson*, No. 12-1088, dkt. 41 at 4−6 (7th Cir. Feb. 20, 2013) (ordering supervision by the United States

Probation Office for the Northern District of Illinois); *Newman v. Metrish*, 300 F. App'x. 342, 344 (6th Cir. 2008); *Waiters v. Lee*, 168 F. Supp. 3d 447, 455 (E.D.N.Y. 2016); *Newman v. Harrington*, 917 F. Supp. 2d 765, 792 (N.D. Ill. 2013).

Pursuant to Federal Rule of Appellate Procedure 23(c), Mr. Myers is ordered to be placed in quarantine for 14 days beginning no later than Monday, June 1, 2020, and continuing up to and including his release from prison effective at noon Central time on Monday, June 15, 2020, and shall thereafter be subject to home confinement and supervision by the United States Probation Office for the Southern District of Indiana on the following conditions:

1. Mr. Myers must make contact with the U.S. Probation Office for the Southern District of Indiana, 46 E. Ohio St., Room 101, Indianapolis, IN 46204, within 72 hours of his release from the Indiana Department of Correction facility where he is currently housed—that is, no later than noon Central time on Thursday, June 18, 2020. He shall continue to report to the Probation Office periodically as directed by the United States District Court or the Probation Office.

2. Mr. Myers shall not leave his residence except for verified medical appointments or at the direction of the Probation office or Court.

3. Mr. Myers shall not commit any federal, state, or local crime.

4. Mr. Myers shall not unlawfully use or possess a controlled substance. The Court may subsequently order periodic drug testing.

5. Mr. Myers shall not possess a firearm, ammunition, destructive device, or any other dangerous weapon.

6. Mr. Myers shall appear in court as required and surrender to serve any sentence, as ordered by a court.

7. Mr. Myers shall not obtain a passport.

8. Mr. Myers shall reside with his mother, Jodie Myers, as third-party custodian and shall notify the Probation Office at least 10 days prior to any change in residence or employment.

9. Mr. Myers shall have no contact with the family of Jill Behrman.

10. Mr. Myers shall not associate with any persons engaged in criminal activity and shall not associate with any person convicted of a felony, unless granted permission to do so by the Probation Office.

11. Mr. Myers shall permit a Probation Officer to visit him at any time at home or elsewhere and shall permit confiscation of any contraband observed in the plain view of the Probation Officer.

12. Mr. Myers shall notify the Probation Office within 72 hours of being arrested or questioned by a law enforcement officer.

13. Mr. Myers shall be placed on electronic monitoring under the standard conditions for electronic monitoring employed by the Probation Office in this district.

14. Mr. Myers shall follow all Center for Disease Control and Prevention guidelines regarding social distancing.

15. Prior to June 11, 2020, Mr. Myers's counsel shall provide to the Court and the Probation Office all contact information, including address and telephone number(s), for Jodie Myers.

**IT IS SO ORDERED.**

Date: 5/29/2020

_____
JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Faaris Akremi
JENNER & BLOCK LLP
353 North Clark Street
Chicago, IL 60654

Clifford W. Berlow
JENNER & BLOCK LLP
353 North Clark Street
Chicago, IL 60654

Marie F. Donnelly
ATTORNEY AT LAW
mfdonnelly05@gmail.com

Jesse R. Drum
INDIANA ATTORNEY GENERAL
jesse.drum@atg.in.gov

Andrew A. Kobe
INDIANA ATTORNEY GENERAL
andrew.kobe@atg.in.gov

United States Probation Office